**UNITED STATES of America, Plaintiff,**

v.

**Franklin Delano LOPEZ, Defendant.**

**Cr. No. 93–386 (JAF).**

United States District Court,
D. Puerto Rico.

May 26, 1994.

Epifanio Morales, Miguel A. Pereira, Asst. U.S. Attys., and Guillermo Gil, U.S. Atty., San Juan, PR, for plaintiff.

Alan R. Feuerstein and Frank Pola, San Juan, PR, for defendant.

## ORDER

FUSTE, District Judge.

Before the court are defendant Franklin Delano López' motions for various reliefs. Defendant raises a multitude of issues in the two motions, which we will address in turn.

## I.

### Discussion

#### A. Continuance

Defendant first requests a continuance, alleging that the government has failed to turn over certain discovery materials and others have been delivered in an incomplete state, and, as a result, there is insufficient time for defendant's counsel to adequately prepare for trial. A trial court is granted broad discretion in deciding whether to grant a continuance. *United States v. Rodríguez Cortés*, 949 F.2d 532 (1st Cir.1991). Factors which may be taken into account when determining whether to grant a continuance include (1) the amount of time available for preparation, (2) the likelihood of prejudice resulting from a denial, (3) the defendant's role in causing the inadequate preparation time, (4) the degree of complexity of the case, and (5) the availability of discovery from the prosecution. *Id.* A motion for continuance must be granted if the denial would be an unreasonable and arbitrary insistence on accelerating the proceedings. *United States v. Soldevila–López*, 17 F.3d 480 (1st Cir.1994). Such is not the case here. *Soldevila–López* involved a situation where a defendant did not have adequate time to respond to a new psychological assessment, which was given on the day of the sentencing. Those circumstances are not similar to the facts here, where defendant has had, and still has, more than sufficient time to prepare for trial.

The trial setting was announced in our January 20, 1994, status conference order. *Docket Document No. 13.* At that time, and at the request of defense counsel, we granted substantial time for trial preparation. The June 6, 1994 trial setting represents an agreed trial date which allowed defendant almost six months to prepare for

trial. The court tied the trial setting with other relief beneficial to defendant. We ordered the early production of Jencks Act material, and forced the government to issue subpoenas against banking institutions, in order to obtain records that the defendant, not the government, needed for trial purposes. Throughout the course of this case, we have considered all dispositive motions filed by the defendant, many of them repetitive in nature. The defendant has obtained prompt rulings from the court. The court has met with counsel and the prosecutor on a number of times to personally verify that the pretrial preparation progressed as expected. Under these circumstances, there will be no continuance.

## B. *Multiplicity of Counts*

Defendant next alleges that three of the counts of the indictment are multiplicious and should, therefore, be dismissed or consolidated. The superseding indictment contains seven counts charging violations of 18 U.S.C. § 1014.[1] Counts one, two, and four each allege that false and material statements were made to First Federal Savings Bank (FFSB) in order to obtain various loans. Defendant contends that each of the FFSB loans constituted a rollover of prior loans, in that each was obtained in order to pay off the previous obligation. Therefore, according to the defendant, each loan with FFSB was inextricably intertwined with the others. The government argues that each of the loans was a separate event, based on individual applications and individual collateral, and caused the bank to disburse separate, discrete amounts of money.

■ An indictment is multiplicious and in violation of the constitutional prohibition against double jeopardy if it charges a single offense in more than one count. *United States v. Brandon*, 17 F.3d 409 (1st Cir.1994). The central question is whether a jury could find that the actions in the allegedly multiplicious counts, viewed objectively, constituted separate events of fraudulent behavior. *Id.* In *Brandon*, the First Circuit, addressing the issue of multiplicity in the context of bank fraud, took into account the number of banks, the number of transactions, and the number of movements of money involved in the scheme. The court found separate executions of a scheme to defraud where one bank extended a number of separate mortgage loans based on fraudulent loan applications, each loan was approved separately, and each fraudulent application resulted in a new disbursement of money by the bank.

■ In essence, defendant's argument is that each succeeding loan was used to extend the amount of time in which López could pay back the previous loan, and not to obtain a new issuance of money. However, the focus of the statute prohibiting the making of a false statement in a loan application is the false statement, not the action induced by that statement, as is evidenced by the fact that actual reliance by the bank is not a required element of the crime. *United States v. Copple*, 827 F.2d 1182, 1187 (8th Cir.1987), *cert. denied*, 484 U.S. 1073, 108 S.Ct. 1046, 98 L.Ed.2d 1009 (1988). The statute itself also explicitly mentions that making a false statement for the purpose of gaining an extension of a loan is a violation of the statute. In this case, each transaction utilized completely different documents for collateral.[2] In addition, each of the three loans from FFSB enumerated in the indictment was for a different amount. The first loan, made in November of 1988, was for $300,000; the second loan, made in September of 1989, was for $400,000; and the third

---

1. 18 U.S.C. § 1014 provides in pertinent part:

Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of . . . any institution the accounts of which are insured by . . . the Federal Deposit Insurance Corporation . . . upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan or any change or extension of any of the same, by

renewal, deferment of action or otherwise, or the acceptance, release, or substitution of security therefor, shall be fined not more than $5,000 or imprisoned not more than two years or both.

2. The loan in count one was secured with several accounts receivable, the loan in count two utilized an insurance claim, and the loan in count four used a lease agreement. The indictment alleges that each of the documents was falsified.

loan, made in January 1990, was for $1.4 Million. Even if each loan was used to pay off the previous debt, each time a larger amount of money was borrowed, relying on different false statements, therefore inducing a new disbursement of money over and above the amount which may have been used to pay back the previous loan. In light of these objective facts, we find that the indictment charges three discrete instances where a false statement was allegedly utilized to influence the action of the bank. For this reason, we deny the request for consolidation.

### C. *Failure to Turn Over Grand Jury Materials*

Defendant alleges that the grand jury transcripts turned over to him were incomplete and requests that those witnesses whose testimony transcripts are incomplete be prevented from testifying at trial. The government has notified the court that complete transcripts of the grand jury testimony of Porfirio Brito, Israel Rodríguez, and Rogelio Pérez Guzmán have been provided to the defendant. Therefore, this request is moot, and the testimony of those witnesses will be allowed at trial.

### D. *Failure to Turn Over Discovery Materials*

This item was dealt with in our order of April 29, 1994. The informative motion of May 17, 1994 confirms that the government has complied with discovery requests.

### E. *Grand Jury Proceedings*

Defendant raises several issues regarding the grand jury proceedings. He argues that the indictment must be dismissed because an FBI agent was sworn in as an agent of the grand jury, there was an irregularity involving the grand jury foreperson, the prosecution knowingly used false and perjured testimony in front of the grand jury, and the totality of the circumstances destroyed the grand jury's independence.

■ We begin with the premise that, in order to obtain a dismissal of an indictment for non-constitutional errors in the grand jury proceeding, there must be a finding that the errors were prejudicial to the defendant such that they "substantially influenced the grand jury's decision to indict," or "there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256, 108 S.Ct. 2369, 2374, 101 L.Ed.2d 228 (1988) (quoting *United States v. Mechanik*, 475 U.S. 66, 78, 106 S.Ct. 938, 945, 89 L.Ed.2d 50 (1986)). Grand jury proceedings are given a presumption of regularity such that only "serious and blatant prosecutorial misconduct that distorts the integrity of the judicial process" will result in dismissal of an indictment. *United States v. Rivera–Santiago*, 872 F.2d 1073, 1088 (1st Cir.1989) (quoting *United States v. Giorgi*, 840 F.2d 1022, 1030 (1st Cir.1988)). With this background in mind, we will address defendant's contentions.

### 1. Role of FBI Agent During Grand Jury Proceedings

■ The defendant first argues that the independence of the grand jury was compromised because Juan T. Becerra, an FBI agent, became an agent of the grand jury. Defendant alleges that Becerra was present during the grand jury's consideration of unrelated evidence and during discussions between the prosecutor and the jurors.

The Federal Rules of Criminal Procedure do not explicitly authorize the employment of governmental agents by the grand jury. The use of such agents was addressed by the Supreme Court in *Nova Scotia*. The Court found that where the prosecutors administered oaths to IRS agents to swear them in as agents of the grand jury, and the evidence unquestionably showed that the grand jurors viewed the agents as aligned with the prosecution, but where there was no evidence that this situation caused the grand jury to have an exalted view of the IRS agents' reliability or credibility, or that the presence of the agents had any effect on the grand jury's decision to indict, there were no grounds to dismiss the indictment. *Nova Scotia*, 487 U.S. at 259, 108 S.Ct. 2376.

The transcript of the grand jury proceedings shows that Luis Plaza, the original As-

sistant United States Attorney working on the case, introduced Mr. Becerra to the grand jury and asked them to make him their agent. Becerra was sworn in by the foreperson of the grand jury on February 6, 1992. On July 21, 1993, after the investigation had been transferred to a new grand jury, Becerra was sworn in by the foreperson of the new grand jury. When the prosecutor referred to the agent, he called Becerra "an agent of your Grand Jury." *See Grand Jury Transcript* of October 13, 1993, at 1. There is no evidence to support López' contention that Mr. Becerra was "obviously present during the Grand Jury's consideration of unrelated evidence and during discussions between the prosecutor and the Grand Jury." There is no evidence the grand jury gave any undue reliance or credibility to Becerra's testimony. In sum, we cannot find that the fact that Becerra was sworn in as an agent of the grand jury destroyed the grand jury's independence or tainted the indictment.

## 2. Grand Jury Foreperson

■ Defendant alleges that there was some irregularity in the grand jury proceedings involving the foreperson. The selected foreperson knew Mr. López and had to be excused due to this conflict. On September 29, 1993, the day that this first became apparent, the deputy foreperson was not present. As a result, the secretary of the grand jury served as the acting foreperson on that day, and swore in the witness who testified on that occasion. Defendant contends that the secretary, who substituted for the original foreperson, was not appointed by the court as required by Fed.R.Crim.P. 6(c).[3] The defendant further alleges that on later days during the investigation, when the chosen deputy foreperson was present, the government continued to defer to the secretary, who had taken over the first day for the original foreperson. Because this secretary was not chosen as specified in Fed.R.Crim.P.

6(c), defendant alleges that the prosecutor may have handpicked this substitute in order to ensure that an indictment would result.

The confusion of the defendant seems to arise from the interchangeable use in the transcript of the terms "deputy foreperson," "Mr. Foreperson," and "acting foreperson." A close reading of the transcript reveals that, with the exception of September 29, when he was not present, the chosen deputy foreperson did take over the duties of the foreperson, as Fed.R.Crim.P. 6(c) dictates. For example, the transcript of testimony from November 10, 1993, reads:

> Mr. Pereira: We have asked, for the record, that the Foreman of the Grand Jury be excused, as he has been excused throughout all the proceedings involving the target of this investigation which I am presenting, Mr. Franklin Delano López. Instead, though, we have the acting foreman, the deputy foreman. Sir, do we have a quorum?
>
> Foreperson: Yes. We have 16 jurors.

*Grand Jury Transcript* of November 10, 1993, at 1.

And on December 8, 1993, when the proceedings began for the day, the following interchange took place:

> Mr. Morales: Mr. Foreperson, I request confirmation—and excuse me. Before we proceed, Mr. Foreperson, this is the case of Franklin Delano López. As in the past, we would request that you recuse yourself, and I would request that the deputy foreperson assume his duties.
>
> (The acting Foreperson is excused.)
>
> Mr. Morales: Let the record reflect that Mr. Foreperson has departed the Grand Jury and the Deputy Foreperson has now assumed his duties.

*Grand Jury Transcript* of December 8, 1993, at 2.

**3.** Fed.R.Crim.P. 6(c) provides:

The court shall appoint one of the jurors to be foreperson and another to be deputy foreperson. The foreperson shall have power to administer oaths and affirmations and shall sign all indictments. The foreperson or another juror designated by the foreperson shall keep record of the number of jurors concurring in the finding of every indictment and shall file the record with the clerk of the court, but the record shall not be made public except on order of the court. During the absence of the foreperson, the deputy foreperson shall act as foreperson.

Therefore, later in the proceedings on December 8, 1993, when the proposed original indictment was given to "Mr. Foreperson," our reading of the transcript differs from that of defendant in that we find that the prosecutor was referring to the deputy foreperson, who took over the duties of the original foreperson. This is also borne out by the prosecutor's direction to the jury: "It's necessary, as we have done with all the proceedings throughout this particular proposed indictment, that you deliberate with the Deputy Foreperson and not with the Foreperson of the Grand Jury" (the person who had suffered a conflict of interest). *Grand Jury Transcript* of December 8, 1993, at 12. The original indictment, signed on December 8, 1993, bears the handwritten title "Deputy Foreperson" under the signature in the space reserved for the foreperson.

The transcript reveals, then, that the only role played by the secretary, who was elevated to acting foreperson for one day, was to swear in one witness. On each of the other days, the deputy foreperson took over, in accordance with Fed.R.Crim.P. 6(c). As to the one day when the deputy foreperson was not present, we cannot find any significant error in that occurrence. The foreman of a federal grand jury has only ministerial duties, which do not meaningfully affect the rights of the accused, and the failure of the foreman to carry out such duties generally will not invalidate an indictment. *United States v. Hobby,* 702 F.2d 466, 468–69 (4th Cir.1983), *aff'd,* 468 U.S. 339, 104 S.Ct. 3093, 82 L.Ed.2d 260 (1984). The use of an acting foreperson to swear in a witness during one day of testimony certainly did not have an influence upon the grand jury's independence, nor is there any evidence that López was prejudiced by the occurrence.[4]

### 3. Perjured Testimony

■ Defendant claims that the prosecutors knowingly used perjured testimony in front of the grand jury. First, defendant alleges that Special Agent Becerra stated to the grand jury that Mr. López caused a four-million-dollar loss to First Federal Savings Bank, a claim which was not supported by any of the evidence, and later told the grand jury that López used falsified collateral to obtain a $2.3 Million loan. Defendant claims that this testimony is controverted by statements of the president of the bank, which suggest that Mr. López' loans are not in arrears, and that the bank "will probably lose over two million dollars."

We fail to find any evidence of perjury. The testimony in front of the grand jury shows that Mr. López, personally and through his several businesses, had a number of loans with FFSB. The statement by the President of FFSB reveals that even the bank is uncertain as to how much money will be lost as a result of the many loans with López. As to the allegation that Becerra's statement about the $2.3 Million loan clearly displayed perjury, such a claim takes the statement out of context. What Becerra said was "[w]e received information through a source that Mr. Delano López had falsified some receivables which were due to him and he falsified this [sic] receivables to the First Federal Savings Bank in order to obtain a 2.3 million dollar loan." As Becerra was repeating what he had been informed, we do not find a contradiction in his testimony.

In any event, loss on the part of the bank need not be proven to convict a defendant of making false statements to the bank pursuant to 18 U.S.C. § 1014, the statute under which Mr. López was indicted. *United States v. Waldrip,* 981 F.2d 799, 806 (5th Cir.1993). Therefore, even if misinformation was given to the grand jury in relation to the

---

**4.** Defendant's reliance on *United States v. Williams,* —— U.S. ——, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992), is unavailing. *Williams* held that the inherent supervisory power of the court may not generally be used to create grand jury procedural rules not specifically required by statute or the Constitution. In so holding, the Court reaffirmed that the supervisory power may be used to dismiss an indictment where there are violations of Fed.R.Crim.P. 6 in the grand jury

proceedings, which cause prejudice to the defendant. Defendant continues to miss the boat on the point that there will be no dismissal of an indictment for nonconstitutional violations without a showing of prejudice. Even if the unsworn, handpicked acting deputy foreperson had presided over the entire grand jury proceedings, unless there was some actual prejudice to the defendant, we could not use our supervisory power to dismiss the indictment.

actual loss sustained by FFSB, it was immaterial. And once again, we fail to find any suggestion that the grand jury was influenced by such allegedly perjurious testimony in its decision to indict.[5]

The second instance of perjury is allegedly found in the testimony of Arturo Somohano, an officer from FFSB. According to López, Somohano testified before the grand jury that there was only one occasion, in 1990, when Somohano became personally involved with one of Mr. López' loans, and authorized the disbursement of the loan on his own initiative. López contends that this is totally controverted by evidence that Mr. Somohano was involved with, and approved, many of López' loans with FFSB. Viewing Mr. Somohano's testimony as a whole, we find that López mischaracterizes the statements made. Somohano testified that "at no time did I authorize any disbursement to Mr. López that was not an order from my superiors," except for one situation which involved a piece of land that was to be leased to Pueblo Supermarkets. We do not take this statement to suggest that Somohano never authorized any of López' loans, merely that he did not agree with his superiors' frequent orders to authorize loans to López. Even assuming that there was a discrepancy in Somohano's testimony, we fail to see how López could have been prejudiced by such a statement.

### 4. Totality of the Circumstances

Defendant alleges that the totality of the circumstances necessitates the dismissal of this indictment. As we noted above, the ability of trial courts to dismiss indictments under our supervisory power has been seriously circumscribed by the Supreme Court.

*See also United States v. Santana,* 6 F.3d 1, 11 (1st Cir.1993) (federal courts should "refrain from using the supervisory power to conform executive power to judicially preferred norms by dismissing charges, absent cognizable prejudice to a particular defendant"). After finding that none of the individual allegations create any concern of prejudice to the defendant, we cannot find that the combination of several baseless claims should result in the extreme remedy of a dismissal of this indictment.

### F. *Attorney–Client Relationship*

Finally, we address López' contention that documents recently revealed to him show that the prosecution interfered in the attorney-client relationship between López and Luis Plaza, López' original attorney. López claims that correspondence between the acting U.S. Attorney, Guillermo Gil, and the Office of Professional Responsibility, reveals that Gil conversed with Plaza while Plaza represented López. The correspondence which is the object of this contention was generated in response to López' complaints, which have been detailed in previous orders,[6] regarding misconduct on the part of the U.S. Attorney's Office. In the memo of November 16, 1993, Gil states that he contacted Plaza in order to investigate the charges made by López. We fail to see how López can maintain that there was a breach of the attorney-client privilege when he himself loudly published the allegations which the U.S. Attorney proceeded to investigate. Of course, the attorney-client privilege may be waived by revealing information to a third party. *See United States v. Gann,* 732 F.2d 714, 722–23 (9th Cir.), *cert. denied,* 469 U.S.

---

5. Even if material perjurious testimony was actually presented to the grand jury, it is unclear whether our supervisory power could be used to dismiss the indictments after the Supreme Court's holding in *United States v. Williams,* —— U.S. ——, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992). In *Williams,* the Court held that the supervisory power may only be used to dismiss an indictment for misconduct before the jury when the misconduct consists of a violation of those "few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions." *Williams,* 112 S.Ct. at 1741 (quoting

*United States v. Mechanik,* 475 U.S. 66, 74, 106 S.Ct. 938, 944, 89 L.Ed.2d 50 (O'Connor, J., concurring)). *See also United States v. Sitton,* 968 F.2d 947, 953 (9th Cir.1992) (uncertain whether *Williams* prohibits supervisory dismissal of indictment based on use of perjured testimony before grand jury).

6. More background regarding López' various allegations surrounding the alleged attempts of several Assistant U.S. Attorneys to secure his support for the post of U.S. Attorney can be found in our orders of April 15, 1994 and March 31, 1994.

1034, 105 S.Ct. 505, 83 L.Ed.2d 397 (1984). After López publicly claimed that AUSA Osvaldo Carlo Linares had suggested to Plaza that López' indictment would be dropped if López were to use his influence to secure the post of U.S. Attorney for Carlo, we cannot find that Plaza's denial that such a conversation took place was in violation of the attorney-client privilege. The privilege requires that an attorney retain the confidences disclosed by his clients; it does not require an attorney to agree with whatever the client claims has occurred.[7] It is unclear how Mr. López conceived that his claim of misconduct was to be investigated, other than by discussing the allegations with those who were involved. Mr. Plaza's offer to be available in order to discuss the allegations raised by López does not constitute a breach of the attorney-client privilege.

López' claim that AUSA Carlo "admits that on October 28, 1993 he had a conversation with Luis Plaza contrary to Plaza's obligations as counsel [sic] Mr. López" is simply not borne out by the facts. According to the memo written by Carlo, he was contacted by Plaza regarding the possible endorsement of Carlo by López, for the office of U.S. Attorney, and Carlo stated that he could not meet with López due to the potential conflict of interest, as López was under grand jury investigation. The attorney-client privilege only covers communications with an attorney for the purpose of securing a legal opinion or legal services. *United States v. Wilson*, 798 F.2d 509, 512 (1st Cir.1986). Therefore, the discussion of López' possible support for Carlo's nomination to the post of U.S. Attorney could not have been a violation of the attorney-client privilege. Even if we were to find such a violation, there is not the least insinuation that it may have infected the grand jury's decision to indict Mr. López.

## II.

### Conclusion

In the multitude of motions which Mr. López has paraded before this court, we cannot find any evidence of prejudice to the

defendant in the sense of influencing the grand jury's decision to indict. For this reason, the indictment must stand. Defendant's motions for dismissal of the indictment, consolidation, and other relief, *Docket Document Nos. 42 and 44*, are **DENIED IN ALL ASPECTS.**

**IT IS SO ORDERED.**

---

7. López suggests that these new documents should cause us to revisit his claim of the conflict of interest of Mr. Plaza. Because we had these documents for *in camera* inspection at the time of our previous rulings on this issue, we see no need to address it yet again.