GAJARSA, Circuit Judge,
dissenting.
I respectfully disagree with the court’s holding and reasoning. First, the court allows Ericsson to submit its WMS Gaming claim construction argument, for the first time, on appeal. Contrary to the court’s analysis, the shift in claim construction is more than an “infinitesimal tweak in scope.” The facts belie that position. It is in fact a paradigm shift which should not be tolerated. Ericsson procedurally defaulted by not making the argument to the trial court, and the facts of this case weigh against excusing the waiver. The court’s approach misapplies our waiver jurisprudence and fails to understand the policies that regulate the proper relation of trial and appellate courts. Second, although it finds the infringement judgments flawed, the court nonetheless delves into the trial court’s damage analysis. There is no final determination of liability, therefore the damages analysis is advisory. Issuing an advisory opinion is improper and we should refrain from doing so.
For these reasons, I must respectfully dissent.
I.
A.
The procedural facts are relatively straightforward. On July 20, 1999, this court issued its opinion in WMS Gaming Inc. v. Int’l Game Technology, 184 F.3d 1339 (Fed.Cir.1999). The court denied rehearing en banc on September 17, 1999. In WMS Gaming, the court held that the structure of a computing means, for purposes of section 112, ¶ 6, is the microprocessor programmed to carry out an algorithm recited in a patent’s written description. 184 F.3d at 1349. The algorithm effectively converts the computer to a special purpose device that serves the function recited in the claim. Id. Although on appeal Ericsson argues the theory propounded by WMS Gaming, it never made the argument in the relevant pre-trial or trial proceedings below.
B.
At the pre-trial motions and hearings Harris and Ericsson vigorously disputed the proper construction of the time domain processing means in claim 1 of U.S. Patent No. 4,365,338 (“the ’338 patent”). The relevant language was
time domain processing means for simulating the time domain effect of said dispersive medium on signals transmitted through it by deducing prescribed characteristics of said medium, and for producing estimates of said information signals in accordance with a preselected relationship between said prescribed characteristics of said simulated effect and said known and received signals[.]
’338 patent, col. 17, II. 54-61.
The matter was amply briefed by competent counsel. The parties submitted a joint claim construction brief on November 24, 1999. On December 2, 1999, five months after WMS Gaming issued, Erics *1261 son filed its opening Markman brief. Ericsson filed a reply brief on December 6, 1999. The Master conducted a hearing on December 13-15, 1999. The Master issued a “draft” claim construction order on February 29, 2000, and asked for comments from the parties. Ericsson filed objections. After considering them, the Master issued his final two hundred page claim construction order on March 29, 2000.
The Special Master ruled that the “time domain processing means” of claim 1 was a means plus function claim term within the meaning of § 112, ¶ 6. The Special Master further ruled that the function of the time domain processing means was twofold: (1) “simulating the time domain effect of said dispersive medium on signals transmitted through it by deducing prescribed characteristics of said medium”; and (2) “producing estimates of said information signals in accordance with a preselected relationship between said prescribed characteristics of said simulated effect and said known and received signals.” (Special Master’s Final Claim Construction Order)
Between filing the joint brief in November 1999, and the Master’s final order in March 2000, Ericsson made a series of claim construction arguments. In none of those arguments did Ericsson assert, directly or indirectly, the WMS Gaming argument now pressed on appeal. First, in the November joint brief and its opening Markman brief, Ericsson argued that the structure of the “time domain processing means” was fast array processor 37A. In its December 6 reply brief, however, Ericsson subtly shifted positions. In the reply, Ericsson argued that the relevant structure was “the fast array processor 37A and the support processor 37B in Fig. 4 and its equivalents.” Ericsson further argued for limiting the “producing estimates” function identified by the Master. Thus, Ericsson argued that “producing estimates” meant “selecting discrete values that are closest to nondiscrete values that are close, but not equal to the unknown discrete values.” Put differently, Ericsson vigorously contended that a “two-step” analytical process, as manifested in the “producing estimates” provision, was a functional limitation on the time domain processing means. As the court observes, ante at 1251, Ericsson never argued to the trial court or Special Master — as it does on appeal — that the relevant structure was some group of microprocessors implementing the “decqding algorithm” described in the ’338 patent. See ’338 patent, cols. 5-9. In spite of the subtle changes Ericsson never made the WMS Gaming argument at this, or any other, stage of the trial proceedings.
Ultimately, the Special Master ruled that the relevant stmcture for the time domain processing means was “symbol processor 37.” On April 18, 2000, Ericsson objected to the Master’s final order and sought reconsideration in the district court. Nearly a year later, on March 23, 2001, the district court held a hearing on Ericsson’s objections. In the April 2000 objections, and at the March 2001 hearing, Ericsson renewed its “producing estimates” argument. Ericsson thus elected to argue for a limitation on the function, rather than the structure, of the claimed time domain processing means. In neither the April 2000 objections, nor at the March 2001 hearing, did Ericsson make its current WMS Gaming argument to the district court.
The parties filed post-hearing briefs. On May 29, 2001, the district court overruled Ericsson’s objections relating to the “producing estimates” function, but remanded for clarification, by the Master, concerning the construction of the term “information signals the value of which for *1262 which [sic] minimizes the sum of the squares” in claim 2. On May 31, 2001, the Master replied that no further clarification of the disputed claim 2 term was required. In July 2001, the district court adopted the Master’s recommendation.
By letter brief on June 12, 2002, Ericsson sought further revision to the claim construction of the “information signals” term in claim 2. On August 2, 2002, the district court overruled Ericsson’s continued objection and approved the Master’s May 31, 2001, claim construction.
From October 7 to 29, 2002, three years after this court decided WMS Gaming, the lower court conducted a jury trial. The jury returned a verdict of infringement and assessed damages. Ericsson renewed its Rule 50 motion, asking for a judgment of no infringement. On August 7, 2003, the trial court denied it and entered judgment for Harris.
C.
In short, between the November 1999 joint claim construction and the trial court’s August 2002 ruling, Ericsson actually had at least ten opportunities — in the form of briefs and hearings — to make its claim construction arguments concerning the structure of the time domain processing means. Yet never in (1) the joint claim construction statement; (2) the opening Markman brief; (3) the reply brief; (4) the three days of argument at the Markman hearing; (5) post hearing briefs to the Master; (6) April 2000 objections to the Master’s final report; (7) the district court’s March 2001 hearing on the objections; (8) post-hearing briefs; (9) objections to the Master’s May 2001 ruling; nor (10) Ericsson’s June 2002 letter brief to the trial court; did Ericsson ever argue that WMS Gaming meant the structure of the claimed “time domain processing means” was the decoding algorithm described in the ’338 patent specification. At each of these many opportunities, Ericsson argued that the structure of the “time domain processing means” was either processor 37A or processors 37A and 37B. The function, Ericsson argued, was limited by the meaning of “estimates” in “producing estimates”. Nor did Ericsson make its current argument at any other time between the November 1999 joint claim construction brief and the August 2003 ruling denying Ericsson’s Rule 50(b) motion. Throughout the proceedings below Ericsson argued, without fail, that the structure of the time domain processing means was some combination of the microprocessors disclosed in the ’338 patent.
Now, on appeal, Ericsson awakens to the benefit of WMS Gaming and argues for the first time that it controls. Specifically, Ericsson now contends that the structure of the “time domain processing means” in claim 1 consists of “processors 37A and 37B programmed to perform the disclosed two-step algorithm [in the ’338 patent].”
II.
It is a long-settled rule that appellate courts will not consider an issue neither pressed nor passed upon below. See United States v. Williams, 504 U.S. 36, 41, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992) (“Our traditional rule ... precludes a grant of certiorari only when the question presented was not pressed or passed upon below” [internal citation omitted]); Duignan v. United States, 274 U.S. 195, 200, 47 S.Ct. 566, 71 L.Ed. 996 (1927) (stating that “[i]t is only in exceptional cases ... that questions not pressed or passed upon below are reviewed,” and collecting cases). The rule fully applies to claim construction arguments not made to the trial court. See Interactive Gift Express, Inc. v. Compuserve Inc., 256 F.3d 1323, 1344-46 (Fed. *1263 Cir.2001); Sage Prods., Inc. v. Devon Indus., Inc., 126 F.3d 1420, 1426 (Fed.Cir.1997).
As the Supreme Court has explained, this rule of appellate procedure is “essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues ... (and) in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence.” Singleton v. Wulff, 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) (quoting Hormel v. Helvering, 312 U.S. 552, 556, 61 S.Ct. 719, 85 L.Ed. 1037 (1941)). Fairness and finality lie at the core of this doctrine. Thus, the Supreme Court has noted, “[t]he verdict of a jury will not ordinarily be set aside for error not brought to the attention of the trial court. This practice is founded upon considerations of fairness to the court and to the parties and of the public interest in bringing litigation to an end after fair opportunity has been afforded to present all issues of law and fact.” United States v. Atkinson, 297 U.S. 157, 159, 56 S.Ct. 391, 80 L.Ed. 555 (1936) (collecting cases). This court has also recognized the rule’s importance in lending procedural certainty to claim construction arguments at trial. “A party’s argument should not be a moving target. The argument at the trial and appellate level should be consistent, thereby ensuring a clear presentation of the issue to be resolved, an adequate opportunity for response and evidentiary development by the opposing party, and a record reviewable by the appellate court that is properly crystallized around and responsive to the asserted argument.” Finnigan Corp. v. Int’l Trade Comm’n, 180 F.3d 1354, 1363 (Fed.Cir.1999).[1]
The courts describe the failure to make an argument to the trial court as a waiver, suggesting a party’s conscious choice to withhold a known argument.[2] That description aptly describes Ericsson’s failure to press its WMS Gaming argument below, as the decision plainly issued before any claim construction was undertaken in this action, and Ericsson had numerous and sufficient opportunities to raise the issue even after the claim construction had been concluded. Ericsson, moreover, is presumed to know the law. See, e.g., Pittsburg & L.A. Iron Co. v. Cleveland Iron Min. Co., 178 U.S. 270, 278, 20 S.Ct. 931, 44 L.Ed. 1065 (1900). Ericsson waived its WMS Gaming argument by not making it below. Although the court need not decide it, the waiver may have attached when Ericsson failed to make the argument to the Special Master, in which case the case comes to us with two levels of procedural defaults. In any event, Ericsson has lost the right to make this argument on appeal. See Sage Prods., 126 F.3d at 1426 (“If a litigant seeks to show error in a trial court’s overlooking an argument, it must first present that argument to the trial court.... [T]his court does not *1264 ‘review’ that which was not presented to the district court”).
Relying on Interactive Gift and Gaus v. Conair Corp., 363 F.3d 1284, 1288 (Fed.Cir.2004), the court holds that the argument was not waived. See maj. op. at 1252. In Interactive Gift this court distinguished between new claim construction arguments, which “changed the scope of the claim construction,” and arguments that merely clarified or defended “the original scope” of a claim construction offered below, or offered additional support for existing claim construction arguments by further citation to the patent specification. Interactive Gift, 256 F.3d at 1346. “Clarifying” arguments are not new, and not within the rule of waiver. Gaus applied that rule to find no waiver where, on appeal, the appellant altered the phrasing but not the content of the claim construction argument at issue. See Gaus, 363 F.3d at 1288. Pointing to this line of cases the court concludes that, because Ericsson focused on the concept of a two-step signal processing routine as a necessary limitation to the asserted claim — though through function rather than structure of the time domain processing means — the argument on appeal merely “clarifies” the Ericsson arguments below. Maj. op. at 1251-52.
The majority’s conclusion is plainly contrary to the law. First, its reliance on Interactive Gift and Gaus is misplaced. Neither case involved a means-plus-function claim term, nor did the parties in those cases try to substitute an argument on structure for an argument on function. Second, contrary to the majority’s suggestion, ante at 1252, our cases draw a firm distinction between the function, and the structure, of a means plus function claim term under § 112, ¶ 6. Shifting its premise from function to structure, Ericsson has presented a new and different argument. There clearly was a distinct paradigm shift in its argument and not merely a clarification.
That new argument has different implications for both the claim construction process, and the subsequent infringement analysis. First, the function and structure draw their meaning from separate, specifically defined components of the patent. When construing the term the court’s task always begins with identifying the function, “staying true to the claim language and the limitations expressly recited by the claims.” Omega Eng’g, Inc. v. Raytek Corp., 334 F.3d 1314, 1321 (Fed.Cir.2003); see also Generation II Orthotics, Inc. v. Med. Tech., Inc., 263 F.3d 1356, 1364-65 (Fed.Cir.2001) (“When construing the functional statement in a means-plus-function limitation, we must take great care not to impermissibly limit the function by adopting a function different from that explicitly recited in the claim.”). By contrast, defining the structure turns on what is recited in the written description, clearly linked to the stated function, and necessary to perform that function. Omega Eng’g, 334 F.3d at 1321. These are distinct analyses that apply different analytical processes. An argument about function directs the court to the claim language itself, whereas an argument about structure directs the court to search the written description for necessary and linked structural descriptions.
Second, the function and structure have sharply distinct roles in the infringement analysis. Statutory infringement first requires that the accused device perform the identical function as the claimed means, but allows infringement with merely equivalent structure.[3] See Omega Eng’g, 334 *1265 F.3d at 1328-29; Odetics, Inc. v. Storage Tech. Corp., 185 F.3d 1259, 1266-67 (Fed.Cir.1999). The infringement analysis for a § 112, ¶ 6 claim, in short, is more sensitive to perturbations in the definition of function (which must be exact) than structure (which allows for equivalents).
Ericsson made the function argument below. That was a strategic judgment, by Ericsson and its sophisticated counsel, concerning what they thought they could prove about the function of their accused devices. In short, had Ericsson prevailed on that function argument, in due course it presumably would have prevailed on summary judgment without the expense of trial. Ericsson must bear the legal burden of that strategic choice of arguments.
Which brings us to the heart of the matter. As noted above, waiver is the procedural device that makes trial the “main event” rather than a “tryout for the road” on a dispositive argument. Wainwright v. Sykes, 433 U.S. 72, 90, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). As the Supreme Court noted in Wainwright, “[a]ny procedural rule which encourages the result that ... proceedings [below] be as free of error as possible is thoroughly desirable[.]” Id. The fact that this matter concerns claim construction, a legal issue this court reviews de novo primarily on the basis of intrinsic evidence, does not alter the purpose of the procedural device. Just as Wainwright observed with regard to the rule of Fay v. Noia,[4] refusing to enforce the waiver rule here “may encourage ‘sandbagging’ ” on the part of patent counsel, “who may take their chances” on a verdict of no infringement in trial court “with the intent to raise” their new claim construction arguments on appeal “if their initial gamble does not pay off.” Id. at 89, 97 S.C.t. 2497. The facts of this case suggest that is precisely what Ericsson has tried to do. Unfortunately, given the court’s holding, their gamble has paid off. We have now established a new exception to the waiver rule — the Oops I Forgot Rule: no matter how many opportunities you have below to make the proper argument now you can make any argument at any time and the court will allow it.
The ultimate issue, of course, is the factual matter of infringement. Had Ericsson made its current argument below, Harris would have presented different evidence to meet it. Discovery may have taken a different course to meet the different issues. The jury would have heard a different case. Indeed, as the court notes, “the parties did not fully brief the issue of structural equivalence of one-step and two-step processes before the district court.” Maj. op. at 21. The court overlooks that this briefing is missing because Ericsson argued that the two step limitation was functional, not structural, as they now argue on appeal. The gap in the record, which sufficiently troubles the court to warrant a remand, belies the court’s contention that the new claim construction argument embodies the “same concept” as the arguments that Ericsson pressed below. Fairness and finality are not served by allowing Ericsson, instead, to keep the current argument in pectorum for appeal while trying the case on a different theory. The court should note that, unless a waiver is enforced, Ericsson’s failure to make this argument in a timely fashion to the trial court will have wasted enormous resources before the Special Master, the trial court, *1266 the jury, and on behalf of the parties. All of which signal the court’s error in finding that the WMS Gaming arguments are not waived.
For the same reasons, there is no cause for this court to excuse Ericsson’s waiver. The Supreme Court has recognized that the appellate courts have discretion, on the facts of individual cases, to resolve issues not passed upon below. See Singleton, 428 U.S. at 121, 96 S.Ct. 2868. That discretion, however, is limited to exceptional circumstances not present here. Ericsson had abundant opportunity to make its current arguments below. There is, in this case, no manifest injustice in holding Ericsson to its choice of arguments before the Special Master and the trial court; nor does Ericsson’s new argument raise issues of great public concern; nor, as the court’s remand indicates, is the proper resolution of the new claim construction and infringement theories “beyond any doubt”. Singleton, 428 U.S. at 121, 96 S.Ct. 2868. But with its holding the court improperly encourages parties to take their chances on a high stakes, potentially cost saving argument at trial, while proliferating new arguments on appeal. For various reasons this court already has a high reversal rate on claim construction issues, which tends to encourage appeals and, perhaps, discourage trial courts from heavily investing in claim constructions below. The court’s holding will only intensify this problem, and further distort the proper trial-appellate relationship regarding claim construction.
In short, the court’s holding is misguided. Ericsson waived its current claim construction argument, and the court should affirm the judgment of infringement of claims 1, 2, and 33 on that basis.
III.
In addition, although it expressly recognizes that “our conclusion with regard to infringement obviates the need to reach the issue [of damages] at this time,” the majority proceeds to decide the damages issue in the Harris cross-appeal. Maj. op. at 24. It is axiomatic that this court should not render advisory opinions on appeal. Because with the court’s mandate liability remains undetermined, the court should simply vacate the damages judgment.
In sum, I disagree with the court’s refusal to conclude that Ericsson waived its appellate claim construction arguments under WMS Gaming. Moreover, the court simply should not delve into unnecessary damages issues. For these reasons, I respectfully dissent.

. The majority's assertion that ''[a]n appellate court retains case-by-case discretion over whether to apply waiver,” maj. op. at 1251, mischaracterizes the limitations on our appellate jurisdiction and ignores the policies advanced by a sound waiver rule. Contrary to the ad hoc approach that the majority suggests, the Supreme Court is clear that waiver will be excused only in "extraordinary circumstances.” Duignan, 274 U.S. at 200, 47 S.Ct. 566. As discussed further below, this court has outlined the exceptional circumstances in which it might be proper to excuse a waiver. The majority, however, does not explain how this case fits any of the recognized exceptions, nor why a new exception is warranted.

. Cf. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) ("A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege.”).

. The majority overlooks the fact that the jury returned a verdict that Ericsson literally infringed claim 1.

. In Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), the Supreme Court suggested a broad standard under which state convicts could obtain federal ha-beas review absent a "knowing and deliberate waiver”, by the prisoner, of an asserted federal constitutional issue. In Wainwright, the Court rejected the Fay suggestion of such a narrow waiver rule, concluding that it encouraged strategic manipulation by litigants.