IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**ARANZI RAE JON WILLIS**,
*Petitioner*,

*v.*

**HON. DEBORAH BERNINI, JUDGE OF THE SUPERIOR COURT
OF THE STATE OF ARIZONA, IN AND FOR THE COUNTY OF PIMA**,
*Respondent Judge*,

**STATE OF ARIZONA**,
*Real Party in Interest.*

---

No. CR-21-0258-PR
Filed August 18, 2022

---

Appeal from the Superior Court in Pima County
The Honorable Deborah Bernini, Judge
No. CR20202482-001
**VACATED AND REMANDED**

---

Order of the Court of Appeals, Division Two
No. 2 CA-SA 2021-0031
Filed July 8, 2021

---

COUNSEL:

D. Jesse Smith (argued), Law Office of D. Jesse Smith, Tucson, Attorney for
Aranzi Rae Jon Willis

Laura Conover, Pima County Attorney, Myles A. Braccio (argued),
Criminal Appeals Section Chief, Maile Belongie, Deputy County Attorney,
Tucson, Attorneys for State of Arizona

Carol Lamoureux (argued), Joshua F. Hamilton, Law Office of Hernandez & Hamilton, PC, Tucson, Attorneys for Amicus Curiae Arizona Attorneys for Criminal Justice

Rachel Mitchell, Interim Maricopa County Attorney, Krista Wood, Acting Appeals Bureau Chief, Phoenix, Attorneys for Amicus Curiae Maricopa County Attorney's Office

_____

JUSTICE MONTGOMERY authored the opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES BOLICK, LOPEZ, BEENE, and KING joined.

JUSTICE MONTGOMERY, opinion of the Court:

¶1　　　　In this case, we clarify the due process rights of a person under investigation before a grand jury, the duties of a prosecutor to present evidence for the grand jury's consideration in determining whether to issue an indictment, and the standard for what constitutes "clearly exculpatory" evidence, especially with regard to a justification defense.

¶2　　　　We hold that the Arizona Constitution guarantees a person under grand jury investigation a due process right to a fair and impartial presentation of clearly exculpatory evidence and that a prosecutor has a duty, even in the absence of a specific request, to present such evidence to a grand jury. We also affirm that evidence is clearly exculpatory if it would deter a grand jury from finding probable cause to issue an indictment as initially stated in *State v. Superior Court* (*Mauro*), 139 Ariz. 422, 425 (1984). Finally, we hold that clearly exculpatory evidence includes evidence relevant to a justification defense that would deter a finding of probable cause.

## I.　FACTUAL AND PROCEDURAL BACKGROUND

¶3　　　　On March 15, 2020, K.K. was shot in the head and torso in the parking lot of Eden Adult Cabaret ("Eden"). Despite his injuries, K.K. survived and told police he had argued with a man who "took the argument serious [sic] and flashed a gun." No guns were found at the scene, but police did recover .45 caliber and 9mm cartridge casings and a locked iPhone belonging to Jesse Portillo.

2

**¶4**        Security video showed Portillo and Anthony Lujan Terrazas arriving at Eden in Terrazas' car around 2:30 a.m.   Video later showed Portillo, Terrazas, and another male walking to Eden's parking lot at 3:49 a.m.   There were no security cameras in the parking lot itself, though, to show what occurred.   K.K. was shot around 4:00 a.m.   Video then showed Terrazas' car leaving the parking lot at 4:04 a.m.

**¶5**        At approximately 7:30 p.m. the same day, Terrazas' sister messaged Aranzi Rae Jon Willis, a friend of Terrazas and Portillo, about her brother "getting into a fight with a white male."   She asked Willis "if they caught a body."   Willis replied that he "heard the person scream after he . . . hit him."   Willis instructed Terrazas' sister to delete the message referencing "hit" and suggested painting Terrazas' car in case it had been seen.

**¶6**        The same day of the shooting, Willis sold a 9mm handgun, which police later recovered along with a second 9mm handgun.   The two guns' barrels and slide assemblies had been switched.   The Tucson Police Department ("TPD") Crime Lab determined that the barrel and slide assembly originally belonging to Willis' gun fired the shell casings found at the scene of the shooting.

**¶7**        The Pima County Attorney sought a grand jury indictment of Willis and Portillo for attempted second degree murder, aggravated assault with a deadly weapon, aggravated assault causing serious physical injury, and unlawful discharge of a firearm in or into the city limits.   At the grand jury proceeding, a TPD detective testified about the investigation into the shooting.   The detective informed the grand jurors about the security video footage, the content of messages between Terrazas' sister and Willis, and that

> [a]cquaintances of Portillo were interviewed. One witness said Portillo admitted to being at Eden with a male, and a male flicked a cigarette on him. The male started the fight, and the male was on top of him, so he had to shoot the male. He then fired at the ground. Another witness said Portillo claimed a friend shot the male. The witness also said that Portillo had a faded black pistol.

¶8        The "witness" referenced in the detective's grand jury testimony was Portillo's girlfriend, who also told police that Portillo said, "the older white male tried to grab [Portillo's] gun" before Portillo's "cousin or friend reacted and gunshots were fired."   After those gunshots, the girlfriend said, Portillo "shot the male and he then shot the ground."   The State did not present information to the grand jury about the identity of the witness or about the victim's attempt to grab Portillo's gun.   Later in the presentation of evidence, a grand juror asked the detective if Portillo said "he made the first shot in self-defense"; the detective responded that he—the detective—"didn't say that."   The following exchange occurred:

> [JUROR]: I thought you said that Portillo claimed it was in self defense that he shot back or something.
>
> GRAND JURY FOREPERSON: They said the guy held him down to the ground.
>
> [DETECTIVE]: Right. He said he held him down on the ground and then he shot him. I didn't use the words you are using.

¶9        The grand jury indicted Willis for attempted second degree murder by a 12–3 vote; aggravated assault with a deadly weapon by an 11–4 vote; aggravated assault causing serious physical injury by an 11–4 vote; and unlawful discharge of a firearm by an 11–4 vote.   *See* Ariz. R. Crim. P. 12.6(a) ("An indictment requires the concurrence of at least 9 grand jurors, regardless of the number of grand jurors hearing a matter."); A.R.S. § 21-404 ("The grand jury shall consist of at least twelve but not more than sixteen persons, nine of whom constitute a quorum for all proceedings before it.").

¶10        Willis subsequently filed a motion seeking remand to the grand jury for a redetermination of probable cause pursuant to Arizona Rule of Criminal Procedure 12.9 ("12.9 Motion").   The court denied his motion, reasoning that the testifying detective "did not present false or misleading testimony nor exclude anything exculpatory" before the grand jury.

¶11        Willis sought special action review, but the court of appeals declined to accept jurisdiction.   We granted review to address conflicting definitions in our caselaw of "clearly exculpatory evidence" and to address

whether the trial court erred in denying Willis' 12.9 Motion, each a recurring issue of statewide importance. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

## II.   DISCUSSION

**¶12**        Willis argues that the State withheld clearly exculpatory evidence of a justification defense, which it was obligated to present even though Willis made no specific request for the State to do so. The State contends that it complied with its obligations and did not withhold any clearly exculpatory evidence. Additionally, in its supplemental brief, the State asserts that there is no constitutional due process right to a fair and impartial presentation of the evidence before a grand jury.

**¶13**        Normally, arguments raised for the first time in supplemental briefing are waived. *Estate of DeSela v. Prescott Unified Sch. Dist. No. 1*, 226 Ariz. 387, 389 ¶ 8 (2011). But where questions before us "are of great public importance or likely to recur," we have made exceptions. *Id.* (quoting *In re Leon G.*, 200 Ariz. 298, 301 ¶ 8 (2001)). Given the function of grand juries in Arizona's criminal justice system, the fundamental importance of procedural protections in grand jury proceedings, and that Willis fully briefed the issue, we exercise our discretion to address the State's due process argument.

**¶14**        We review matters of constitutional and statutory interpretation de novo. *Johnson Utils., L.L.C. v. Ariz. Corp. Comm'n*, 249 Ariz. 215, 219 ¶ 11 (2020). We review a denial of a 12.9 Motion for an abuse of discretion. *See Maretick v. Jarrett*, 204 Ariz. 194, 195 ¶ 1 (2003). "An error of law constitutes an abuse of discretion." *State v. Lietzau*, 248 Ariz. 576, 579 ¶ 8 (2020).

### A.   Right to a Fair and Impartial Presentation

**¶15**        The State, relying on *United States v. Williams*, 504 U.S. 36 (1992), argues that decades of Arizona appellate decisions "requiring the prosecutor to present the evidence in a 'fair and impartial manner,' and present all 'clearly exculpatory' evidence . . . were born out of a misinterpretation of the federal due process clause." The State further asserts that "[t]hese standards are not required by the federal or state constitutions." Misplaced reliance on *Williams* and the absence of any

federal due process requirement aside, the State misconstrues Arizona's Constitution.

**¶16**     In *Williams*, the Supreme Court addressed a procedural rule promulgated by the Tenth Circuit Court of Appeals requiring federal prosecutors to inform a grand jury of "substantial exculpatory evidence." 504 U.S. at 45.[1]   The Court was not asked to consider the presentation of evidence to a grand jury premised on the Fifth Amendment and the Court did not elect to do so.   *Id.* ("Respondent does not contend that the Fifth Amendment itself obliges the prosecutor to disclose substantial exculpatory evidence in his possession to the grand jury.").   Instead, the Court considered whether the "Tenth Circuit's disclosure rule is supported by the courts' 'supervisory power.'"   *Id.*

**¶17**     The Court stated that because the Constitution has not "textually assigned" the grand jury to any branch of government, "the grand jury is an institution separate from the courts" and a "constitutional fixture in its own right."   *Id.* at 47 (last quoting *United States v. Chanen*, 549 F.2d 1306, 1312 (9th Cir. 1977)).   Thus, "as a general matter at least, no . . . 'supervisory' judicial authority exists" over grand jury proceedings, and the Tenth Circuit exceeded its authority.   *Id.*   The Court concluded that federal "courts have no authority to prescribe such a duty [to present exculpatory evidence] pursuant to their inherent supervisory authority over their own proceedings."   *Id.* at 55.

**¶18**     *Williams* neither controls nor informs our analysis.   The relationship between the judiciary and grand juries is fundamentally different in Arizona.   Unlike the Federal Constitution, the Arizona Constitution explicitly addresses grand juries in article 6, section 17, and article 6, section 5(5) gives this Court specific authority to enact rules governing "all procedural matters," including the conduct of grand juries. *See State ex rel. Ronan v. Superior Court*, 95 Ariz. 319, 330 (1964) (concluding that "a fundamental change in the grand jury system . . . can only be made by this [C]ourt upon which has been conferred the authority to make rules" pursuant to article 6, section 5(5) of the Arizona Constitution); *see also* A.R.S. § 21-422(A) (vesting authority in the Arizona Supreme Court to promulgate

---

[1] The presentation of exculpatory evidence is nonetheless required by the Department of Justice's ethical rules.   *See* U.S. Dep't of Just., Just. Manual § 9-11.233 (2022).

rules "govern[ing] the procedures of state grand juries"); Ariz. R. Crim. P. 12.21 (providing that "[t]he provisions of Rule 12 pertaining to grand juries also apply to state grand juries" with exceptions listed).

¶19　　　　Accordingly, while a grand jury acts "independently of either prosecutor or judge . . . to bring to trial those who may be guilty and clear the innocent," in Arizona, the grand jury's power "is not unlimited, and that power is subject to judicial control." *Marston's, Inc. v. Strand*, 114 Ariz. 260, 264–65 (1977). This Court has exercised such control by adopting a rule, among others, requiring remand for a new finding of probable cause if a defendant is denied a "substantial procedural right" in a grand jury proceeding. Ariz. R. Crim. P. 12.9(a); *see also* Ariz. R. Crim. P. 12.1(d)(4)–(5) (providing for instruction of grand jurors as to, among other things, their "duty to return an indictment only if they are convinced there is probable cause to believe an offense has been committed and the person under investigation committed it" and "the right to ask the State to present additional evidence"); Ariz. R. Crim. P. 12.5(a) ("A person under investigation . . . may be permitted to appear upon the person's written request."). Thus, unlike the Supreme Court and federal grand juries, this Court has supervisory authority over grand juries.

¶20　　　　Additionally, there are significant differences in the roles played by grand juries in the federal and Arizona criminal justice systems that bear on the duties of an Arizona prosecutor. A federal grand jury is only required to "assess whether there is [an] adequate basis for bringing a criminal charge" based on the government's presentation of the evidence. *Williams*, 504 U.S. at 51. In contrast, an Arizona grand jury has a broader statutory duty to "inquire into every offense which may be tried within the county." A.R.S. § 21-407(A). And there is no federal corollary to A.R.S. § 21-412 that permits an Arizona grand jury to require the production of evidence "when they have reasonable ground to believe that other evidence, which is available, will explain away the contemplated charge."

¶21　　　　Finally, even if *Williams* had held what the State argues—that there is no Fifth Amendment due process right to the presentation of exculpatory evidence—such a holding would not bind us when interpreting the Arizona Constitution's due process provision. *Pool v. Superior Court*, 139 Ariz. 98, 108 (1984) ("The decisions of the United States Supreme Court are binding with regard to the interpretation of the federal constitution; interpretation of the state constitution is, of course, our

province.").    In our role as "the final arbiter of Arizona constitutional issues," *State v. Youngblood*, 173 Ariz. 502, 506 (1993), this Court "may independently interpret and apply provisions of the Arizona Constitution in a manner that affords greater protection to individual rights than their federal counterparts," *State v. Bush*, 244 Ariz. 575, 598 ¶ 105 (2018).    *See also California v. Ramos*, 463 U.S. 992, 1013–14 (1983) ("It is elementary that States are free to provide greater protections in their criminal justice system than the Federal Constitution requires.").

¶22         The first court to refer to the due process provision of the Arizona Constitution as a source for a right to a fair and impartial hearing was the court of appeals in *Corbin v. Broadman*, 6 Ariz. App. 436 (1967). There, the court stated that "[w]e are governed by certain fundamental rules of law which provide that a defendant must be given a fair and impartial hearing" and explicitly cited article 2, section 4 of the Arizona Constitution first, and then the Fourteenth Amendment to the United States Constitution in support of the legal proposition.    *Id.* at 440–41.    This Court later cited *Corbin* for the same point in *State v. Emery*, 131 Ariz. 493, 506 (1982).    While the Court in *Emery* may have only expressly referenced "the due process and equal protection clauses of the fourteenth amendment," we have never disclaimed *Corbin*'s citation to article 2, section 4 of the Arizona Constitution as an independent source for a due process right to a fair and impartial hearing.    *Id.*    Today we reaffirm, on the basis of article 2, section 4 of the Arizona Constitution, what Arizona courts have said for years: a defendant has a due process right to a fair and impartial hearing before the grand jury.    *See Crimmins v. Superior Court*, 137 Ariz. 39, 41 (1983) ("[A]n accused is entitled to due process during grand jury proceedings."); *Franzi v. Superior Court*, 139 Ariz. 556, 565 (1984) ("It is a requirement of due process that the grand jury be fair and impartial."); *Marston's*, 114 Ariz. at 268 (Gordon, J., concurring in part and dissenting in part) ("[A]t least some due process requirements apply to grand jury proceedings.").

¶23         Inherent in a fair and impartial hearing is the fair and impartial presentation of evidence.    *Crimmins*, 137 Ariz. at 41 ("[D]ue process here requires . . . a fair and impartial presentation of the evidence."); *Mauro*, 139 Ariz. at 424 (discussing state's obligation to comply with due process requirements in making a fair presentation to the grand jury); *Herrell v. Sargeant*, 189 Ariz. 627, 629 (1997) ("When the state uses grand jury procedures, it must present the evidence in a fair and impartial

manner."); *Trebus v. Davis*, 189 Ariz. 621, 623 (1997) ("[D]ue process compels the prosecutor to make a fair and impartial presentation to the grand jury."); *see also Maretick*, 204 Ariz. at 197 ¶ 8 ("To do its job effectively, the grand jury must receive a fair and impartial presentation of the evidence."). A fair and impartial presentation also helps ensure that the ex parte nature of a grand jury proceeding is kept free from abuse. *See State v. Superior Court* (*Collins*), 102 Ariz. 388, 390 (1967); *O'Meara v. Gottsfield*, 174 Ariz. 576, 579 (1993) (Zlaket, J., concurring) ("[T]he secret nature of the hearings, the absence of a judge, and the lack of an adversarial structure make these proceedings ripe for abuse, and warrant additional, not fewer, [procedural] precautions."). Therefore, the failure to fairly and impartially present evidence to a grand jury is the denial of a substantial procedural right guaranteed by the Arizona Constitution. *See Maretick*, 204 Ariz. at 198 ¶ 16, 199 ¶ 19; *Cespedes v. Lee*, 243 Ariz. 46, 48 ¶¶ 6–8 (2017) (considering whether failure to properly instruct grand jury on justification defense constituted denial of a substantial procedural right); *Hansen v. Chon-Lopez*, 252 Ariz. 250, 256 ¶ 23 (App. 2021) ("During a grand jury's investigation, criminal defendants are afforded substantial procedural rights and the right to due process, which includes the right to a fair and impartial presentation of the evidence.").

## B. Prosecutor's Duty to Present Evidence

**¶24** As noted above, an Arizona grand jury is charged with "inquir[ing] into every offense which may be tried within the county which is presented to them by the county attorney." § 21-407(A). This is a procedural prerequisite to the constitutional requirement that an indictment or information is necessary for a criminal prosecution of a felony. Ariz. Const. art. 2, § 30 ("No person shall be prosecuted criminally in any court of record for felony or misdemeanor, otherwise than by information or indictment . . . ."). [2] For a grand jury to return an indictment, it must be convinced "from all the evidence taken

---

[2] This two-fold means of initiating a prosecution stirred up significant debate at the Arizona Constitutional Convention. The grand jury was described as the "greatest preliminary hearing" when "the life or imprisonment of a person is pending." *The Records of the Arizona Constitutional Convention of 1910*, at 170 (John S. Goff ed., 1991). Opponents feared indictment via complaint before a magistrate judge at the discretion of a prosecutor would offer defendants *fewer* protections. *Id.*

together . . . that there is probable cause to believe the person under investigation is guilty of [a] public offense." A.R.S. § 21-413.

**¶25** "The prosecutor's role before the grand jury is unique in our system," because the prosecutor acts "not simply as an advocate, but as a 'minister of justice,' who assists the jurors in their inquiry." *Maretick*, 204 Ariz. at 197 ¶ 10 (quoting Ariz. R. Sup. Ct. 42, Ethical Rule ("ER") 3.8 cmt. 1). Prosecutors "attend [to] the grand jurors when requested by them, and may do so although not requested for the purpose of examining witnesses, in their presence, or of giving the grand jurors legal advice regarding any matter cognizable by them." A.R.S. § 21-408(A); *see also Marston's*, 114 Ariz. at 265 ("It is the duty of the prosecutor, whether it be a county attorney or attorney general, to serve the grand jury."); Ariz. R. Crim. P. 12.4(a)(4) (noting prosecutors are among those who may be present during its sessions and are "authorized to present evidence to the grand jury"). We underscore that "[t]he duties of fair play and impartiality imposed on those who attend and serve the grand jury are meant to ensure that the determinations made by that body are informed, objective and just." *Crimmins*, 137 Ariz. at 41; *see also* ER 3.8 cmt. 1 (observing that prosecutors must see to it "that the defendant is accorded procedural justice"). Thus, for the grand jury to perform its proper function, a prosecutor has an obligation to present evidence for its consideration even absent a request where the evidence "will explain away the contemplated charge." § 21-412.

**¶26** However, a prosecutor is not obligated to present all conceivable exculpatory evidence. *Mauro*, 139 Ariz. at 425 (noting no duty to present evidence of defendant's mental health that "would tend to be exculpatory" because it did not show a clear lack of ability to form the necessary intent). Instead, a prosecutor's duty is to present evidence that is clearly exculpatory. *Id.*; *Bashir v. Pineda*, 226 Ariz. 351, 355 ¶ 12 (App. 2011) ("[T]he prosecutor always has the duty to inform the grand jury of clearly exculpatory evidence . . . ."). Absent this duty, the grand jury could be thwarted in fulfilling its duty to "inquire into every offense which may be tried within the county." § 21-407(A).

### C. Clearly Exculpatory Evidence Defined

**¶27** In *Herrell*, this Court correctly quoted *Mauro* to state that "[c]learly exculpatory evidence is evidence of such weight that it *would*

deter the grand jury from finding the existence of probable cause." 189 Ariz. at 631 (emphasis added) (quoting *Mauro*, 139 Ariz. at 425).   The same day as *Herrell*, this Court issued *Trebus*, which incorrectly cited *Mauro* for the proposition that "[c]learly exculpatory evidence is evidence of such weight that it *might* deter the grand jury from finding the existence of probable cause."   189 Ariz. at 625 (emphasis added) (citing *Mauro*, 139 Ariz. at 425).

¶28        Although the *Trebus* citation to *Mauro* obviously and mistakenly replaced "would" with "might," Willis nevertheless argues we should adopt *Trebus*' definition for clearly exculpatory evidence, in part because it will establish who bears the burden of proof in a 12.9 Motion. The State maintains neither *Herrell* nor *Trebus* govern the issue, and instead urges us to adopt a definition provided by the New Jersey Supreme Court in *State v. Hogan*, 676 A.2d 533 (N.J. 1996).   Before addressing the differing language between *Herrell* and *Trebus*, we consider the State's proffered definition.

¶29        In *Hogan*, a prosecutor failed to present a robbery victim's recantation.   676 A.2d at 536–37.[3]   The Court addressed the prosecutor's duty to present this exculpatory evidence to a grand jury.   *Id.* at 538–42. After considering obligations imposed by other states and *Williams*,[4] the court imposed a "limited duty" on prosecutors requiring the presentation of evidence that directly negates guilt by "squarely refut[ing] an element of the crime in question" and is clearly exculpatory.   *Id.* at 543 (emphasis omitted).   The court reasoned that the exculpatory nature is determined by the "quality and reliability of the evidence," which requires consideration of "the context of the nature and source of the evidence, and the strength of the State's case."   *Id.*

¶30        We decline to adopt *Hogan*'s standard for "clearly exculpatory evidence."   Arizona law eschews qualitative assessments of evidence presented to the grand jury such as "credible" and "material" and entrusts determinations of the quality and reliability of evidence to the members of

---

[3] The robbery victim was threatened, intimidated, and offered a bribe by the defendant's family and friends to change her story.   *Id.*

[4] The New Jersey Supreme Court also rejected the reasoning of *Williams*, as have numerous other state courts.   *Id.* at 540–42 (rejecting *Williams* and collecting cases from other state courts stating the same).

the grand jury itself. *Pfeiffer v. State*, 35 Ariz. 321, 324 (1929) (discerning that a motion to quash an indictment cannot be based on "the insufficiency or the hearsay character of the evidence received by the grand jury in its investigation of the charge against the accused"); *State ex rel. Preimsberg v. Rosenblatt*, 112 Ariz. 461, 462 (1975) ("The weight and sufficiency of the evidence for indictment is a decision which history and the Constitution leave to the judgment of the citizens chosen to serve as members of the grand jury."); *Marston's*, 114 Ariz. at 264 ("In order that it carry out its mission[,] the grand jury has a right to every man's evidence except for those persons protected by a constitutional, common law, or statutory privilege."); *Trebus*, 189 Ariz. at 625 ("[I]ssues such as witness credibility and factual inconsistencies are ordinarily for trial."); *see also Crimmins*, 137 Ariz. at 42–43 (noting that caselaw "clearly prohibit[s] a trial court from considering an attack on an indictment based on the nature, weight or sufficiency of the evidence presented to the grand jury"); *State v. Fulminante*, 193 Ariz. 485, 491 ¶ 11 (1999) ("Evidence presented to a grand jury need not be admissible in trial."); *Franzi*, 139 Ariz. at 565 ("[H]earsay evidence in a grand jury proceeding is not objectionable."); Ariz. R. Evid. 1101(d) (providing that evidentiary rules, aside from rules regarding privileges, are inapplicable to grand jury proceedings). Rejecting the State's request to adopt *Hogan*'s definition of "clearly exculpatory evidence," we return to the differing language between *Herrell* and *Trebus*.

¶31 Neither *Herrell* nor *Trebus* give any justification for their respective use of "would" or "might," but both cite to *Mauro* for their definitions of "clearly exculpatory evidence." *Herrell*, 189 Ariz. at 631; *Trebus*, 189 Ariz. at 625. In arguing for *Trebus*' definition, Willis asserts that the definition we adopt will establish which party bears the burden of proof in a Rule 12.9 determination. We disagree. Regardless of which definition we choose, it remains the defendant's burden to "challenge a grand jury proceeding . . . by filing a motion for a new finding of probable cause alleging that the defendant was denied a substantial procedural right." Ariz. R. Crim. P. 12.9(a).

¶32 There being no reason proffered why we should abandon *Mauro*, we go back to the beginning and affirm *Mauro*'s definition: "Clearly exculpatory evidence is evidence of such weight that it *would* deter the grand jury from finding the existence of probable cause." 139 Ariz. at 425 (emphasis added). Also, the plain language of § 21-412 provides for the grand jury's consideration of evidence that "will explain away" the charge,

12

not evidence that "might" do so. Thus retaining "would" strikes a fair balance between the due process right of the accused and the grand jury's role in determining the existence of probable cause, not the guilt of the accused. *State v. Baumann*, 125 Ariz. 404, 408–09 (1980) (acknowledging that grand juries are not "in the business of holding minitrials").

### D. Clearly Exculpatory Evidence and Justification

**¶33** Having defined clearly exculpatory evidence, we now consider what constitutes such evidence in the specific context of a justification defense. Willis argues that the State withheld clearly exculpatory evidence of the defense of a third person; the State denies this.

**¶34** Arizona Revised Statutes § 13-205(A) provides that "[j]ustification defenses describe conduct that, . . . if justified, does not constitute criminal or wrongful conduct." Therefore, because a determination that a person's conduct was justified would deter a grand jury from finding probable cause, we conclude that evidence relevant to establishing a justification defense is clearly exculpatory. *See* Ariz. R. Evid. 401 (defining relevant evidence as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action"); *see also Herrell*, 189 Ariz. at 630–31 (remanding case to grand jury for redetermination of probable cause because, among other reasons, state failed to present evidence regarding justification in using force to prevent a crime Herrell reasonably thought was being committed against his daughter). Thus, a prosecutor has a duty to present evidence relevant to establishing justification defenses, even where not specifically requested to do so.

**¶35** Arizona law requires that, for use of deadly physical force in defense of a third person to be justified, the third person must also be justified in using deadly physical force. *See* A.R.S. § 13-406 (referencing A.R.S. § 13-405, which permits use of deadly physical force if "a reasonable person would believe that deadly physical force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly physical force"). Therefore, evidence relevant to determining whether Portillo was justified in using deadly physical force is also relevant to determining whether Willis was justified in using deadly physical force to defend Portillo.

¶36 Willis specifically identifies the statement by Portillo's girlfriend—that "the older white male tried to grab [Portillo's] gun"—as evidence that the State improperly withheld.[5] For that to be true, the statement must be relevant to establishing Willis' justification defense.

¶37 The statement that "the older white male tried to grab [Portillo's] gun" is relevant to establishing whether Portillo reasonably believed that "deadly physical force [was] immediately necessary to protect himself against [K.K.'s] use or attempted use of unlawful deadly physical force" under § 13-405. Accordingly, the statement is relevant to whether Willis was justified in shooting the victim to defend Portillo under § 13-406 and is thus clearly exculpatory.

¶38 The statement relayed by Portillo's girlfriend that Portillo told her he "shot the male and then he shot the ground," is also clearly exculpatory. This statement provides further information about the reasonableness of Portillo's use of deadly physical force in determining whether Willis was justified in defending him. *See* §§ 13-405, -406.[6]

---

[5] The State argues that Portillo's girlfriend is an unreliable witness and that any statement provided by her from Portillo is inadmissible hearsay. As explained previously, *see supra* ¶ 30, we leave qualitative assessments of evidence to the grand jury, which may consider hearsay evidence, *Baumann*, 125 Ariz. at 408, and courts may not question the reliability, sufficiency, or admissibility of evidence presented to a grand jury, *Rosenblatt*, 112 Ariz. at 462. Paradoxically, although the State challenges Portillo's girlfriend's credibility concerning her statements that exculpate Portillo, it nonetheless presented other portions of her statement to secure indictments against Willis and Portillo. The State's argument is without merit.

[6] Other evidence proffered by Willis' counsel, including the fact that K.K. was a NCAA wrestler or that K.K. fought with medical personnel while being taken to the hospital, is not relevant to Willis' justification defense because nothing suggests Willis knew these things at the time of the shooting. *See R.S. v. Thompson*, 251 Ariz. 111, 121 ¶ 33 (2021) (noting that a "defendant who offers a defense of justification should be permitted to introduce evidence of specific acts of violence . . . if the defendant either observed the acts himself or was informed of the acts before the [incident]" (internal quotation marks omitted)).

**¶39** The error was not harmless beyond a reasonable doubt. *See Maretick*, 204 Ariz. at 198 ¶ 15. The transcript of the grand jury proceeding makes it readily apparent that grand jurors were exploring the possibility that Portillo acted in self-defense. *See supra* ¶ 8. The omission of Portillo's girlfriend's statements and the detective's unwillingness to expound on the limited evidence that was presented hindered the grand jury's ability to engage in further inquiry about self-defense. *See Herrell*, 189 Ariz. at 630 ("[T]he prosecutor failed to give the jury the apparently uncontradicted facts that might make [a justification defense] and the statutes it refers to relevant and important."); *Maretick*, 204 Ariz. at 196 ¶ 5, 197 ¶ 10 (observing that "[i]t is not the prosecutor's role to deflect the grand jury from its inquiry" where grand juror's questions were cut off). Consequently, we cannot conclude that, given full and accurate information, the grand jury would not have inquired into other relevant aspects of the fight between Portillo and the other male, such as the relative size between the two, in assessing the reasonableness of Portillo's belief that he was justified in using deadly physical force.[7] *See* §§ 13-405, -406; *see also* § 21-412 (authorizing the grand jurors to require the production of available evidence they reasonably believe "will explain away the contemplated charge").

**¶40** Given the failure to present clearly exculpatory evidence and the resulting hindrance of the grand jury's inquiry, the State deprived Willis of a substantial procedural right to a fair and impartial presentation of evidence. The trial court erred in denying his 12.9 Motion.

### E. Instructions and Justification Defenses

**¶41** On remand, the State is not required to reinstruct the grand jury on all relevant statutes after presenting its case and immediately before the grand jury votes on whether to indict Willis. *See Crimmins*, 137 Ariz. at 43 ("[I]nstruction on all the relevant statutes satisfies due process."); *O'Meara*, 174 Ariz. at 577–78 (finding no due process violation in grand jury presentation where grand jurors read all relevant statutes and were provided copies at beginning of term, then reminded of relevant statutes and afforded opportunity to ask to have statutes reread or clarified). But the State is nevertheless obligated to remind the grand jury of relevant

---

[7] Willis' petition for special action noted that K.K. weighed 211 pounds, whereas Portillo weighed 115 pounds.

justification statutes. *See Cespedes*, 243 Ariz. at 48–49 ¶ 9 (stating that prosecutor has duty to "provid[e] instructions on justification defenses that, based on the evidence presented to the grand jury, are relevant to the jurors determining whether probable cause exists to indict the defendant"); *Crimmins*, 137 Ariz. at 42 (remanding to grand jury where it was given an "inaccurate version of the facts in the context of inadequate instructions on the applicable law" regarding citizen's arrest statutes); *Korzep v. Superior Court*, 172 Ariz. 534, 540–41 (App. 1991) (ordering remand to grand jury to instruct on justification defense under A.R.S. § 13-411 because it "could conceivably lead the grand jury to eschew an indictment"); *Francis v. Sanders*, 222 Ariz. 423, 427 ¶ 16 (App. 2009) (discussing prosecutor's duty to instruct grand jury on relevant defense of entrapment). *But cf. State v. Jessen*, 130 Ariz. 1, 5 (1981) (holding that the state was not required to notify grand jury "that crimes other than murder might be involved"); *Mauro*, 139 Ariz. at 425 (finding "that the state is not required . . . to instruct on all lesser included offenses" but "need only instruct the grand jury on the highest charge supported by the evidence"). Because justification evidence exists here, the State must also instruct the grand jury that a "[j]ustification defense[] describe[s] conduct that, if not justified, would constitute an offense but, if justified, does not constitute criminal or wrongful conduct." § 13-205(A); *see also Cespedes*, 243 Ariz. at 49 ¶ 13 (holding that, based on the presentation of justification evidence and the justification instruction, grand jurors "had to consider justification where relevant, but ultimately could decide, based on the facts of the case, whether [the] defendant's conduct was justified").

## F. Requests to Present Exculpatory Evidence

**¶42** While our analysis focuses on a prosecutor's duty to present clearly exculpatory evidence, we take this opportunity to also reiterate the prosecutor's duty to present evidence at the request of a person under investigation. This duty remains unchanged from the standard in *Trebus*.

**¶43** A person may, in writing, request to appear before the grand jury. Ariz. R. Crim. P. 12.5(a). Additionally, a person under investigation may request to present evidence to the grand jury. § 21-412. In either instance, the grand jury may exercise its discretion whether to permit a person to appear or to consider any proffered evidence. *Id.*; *Trebus*, 189 Ariz. at 625. To ensure these provisions have meaning, we stated in *Trebus*:

Given the power of the prosecutor in the grand jury system, the statutory right of the grand jury to decide whether to hear evidence from the defendant, and the defendant's right to request appearance before the grand jury, . . . the county attorney must inform the grand jury that the defendant has requested to appear or has submitted exculpatory evidence.

189 Ariz. at 625.

**¶44** This obligation thus arises when a person under investigation notifies a prosecutor, in writing, of a request to appear before the grand jury or requests the presentation of specific exculpatory evidence. *Id.* at 626; *see also Bashir*, 226 Ariz. at 352 ¶ 1 (finding duty on part of prosecutor to inform the grand jury not only that defendant wished to testify but also "of the subject and outline of [the defendant's] proposed evidence"); *cf. Jessen*, 130 Ariz. at 5 (noting state need not inform grand jury that a defendant *could* be called to testify).

**¶45** We note, though, that a prosecutor is not obligated to present to the grand jury whatever evidence a person under investigation might provide. As in *Trebus*, a prosecutor is not obligated to present a written request that is "vague, does not refer to any specific exculpatory evidence, and is non-committal about [a defendant's] desire to testify before the grand jury." 189 Ariz. at 625. Likewise, a request to present evidence that only impeaches the veracity and credibility of a witness is insufficient to invoke a prosecutor's obligation. *Id.* ("[I]ssues such as witness credibility and factual inconsistencies are ordinarily for trial.").

### III. CONCLUSION

**¶46** Defendants under investigation by an Arizona grand jury have a constitutional due process right to a fair and impartial presentation of the evidence. To ensure a grand jury can perform its duties under Arizona law, a prosecutor has a duty to inform it of all clearly exculpatory evidence that would deter it from finding the existence of probable cause. Where there is evidence relevant to a justification defense that would deter a grand jury from finding probable cause, the prosecutor also has an obligation to present such evidence. To ensure a fair and impartial presentation on remand, we reiterate for the State's benefit that Portillo's

girlfriend's statements are relevant to whether Willis was justified in shooting K.K., making the statements clearly exculpatory.

**¶47** Because the State failed to present clearly exculpatory evidence, thereby denying Willis a substantial procedural right, we vacate the trial court's ruling concerning his 12.9 Motion and remand with instructions to remand to the grand jury for a redetermination of probable cause.